Mr. Jacobs, are you going to argue this or your protégé will do it? We serve at the pleasure of the court, and so if the court would like to hear from my protégé, I would yield my time. But I'm planning to argue. Oh, all right. Well, you're a counsel, so thank you. So you have reserved two minutes for rebuttal. That gives you eight minutes to start, I think, right? Ms. Beard, can you just?  Yeah. Great. All right, you may proceed. Thank you, Your Honor. May it please the court, Brian Jacobs, on behalf of Appellant Jacob Deutsch, who I represent here on appeal. I did not represent him below. This court should vacate and remand Mr. Deutsch's 62-month sentence because it is substantively and procedurally unreasonable, in varying upwards from the guidelines range, which was also the range in which the government asked that Mr. Deutsch be sentenced, which was 12 to 18 months, all the way up to 62 months. Can I stop you right there? Yes. I mean, there seemed to be some disagreement, obviously, between the government and the court as to what should be the range, right? The government was arguing for a higher range based on the intended loss, I'm assuming. Is that right or not? Following the factual findings in sentencing, the court found the guidelines range was— No, I know that. But, I mean, the government was arguing for a different factual finding, right? Previously, the government did argue for a different guidelines range, but ultimately the government sought a sentence within the 12 to 18-month guidelines range, and the district court specifically confirmed that on the record. No, I'm just trying to understand the daylight between the government's original position and the guidelines range that was determined by the court. And the basis for that is intended loss, or just the fact that at the time they made their sentencing submission, the repayments hadn't happened yet? Your Honor, there was an extended period of time and five addendums to the PSR, and I think that the changing nature of the loss calculation related to the extent to which the properties were sold, but I think my— There was a presumptive loss at the time of the PSR, right, because none of the properties had been sold. Correct, Your Honor. So the district court ultimately says, well, the outstanding value of the collateral will rebut the presumptive loss. And at that point, did the government take the position that the outstanding value did not rebut the presumptive loss, or did it agree with the position that it did? Your Honor, I'm— I mean, ask the government. Leave it to my— Just what they did below. I mean, the government's position now will ask that. I don't believe the government contests that 12 to 18 months is the correct guidelines range on appeal. I understood them to contest it and to, in fact, ask for a sentence on the higher end of the calculation that they were advocating, which I thought was 78 to 97. But maybe I read the record wrong, but that was my understanding, that the government was advocating for the guideline application adopted by the PSR with the presumptive loss of $2.8 million, the remaining property that was not sold. But we can check on the record where it was set. Your Honor, I think that the district court specifically confirmed with the government that the sentence they are advocating for at sentencing is at the higher end of the guidelines range found by the court, specifically the 12 to 18 month guidelines range, and not one of the earlier guidelines ranges that were discussed. And it is, the government did agree in the plea agreement, as the guidelines reflect, that in a mortgage fraud case, you do reduce the loss amount by the value of the collateral. And so the ultimate... But regardless, the guidelines range has an anchoring effect.  And you're saying the sentence here is more than three times the higher end of the range. Correct, Your Honor. And eight times the national average for this kind of crime. Correct, Your Honor. And I believe the... But that is because the court gave your client two-year continuance so that he could sell the properties. So he received the benefit of not being sentenced for two years while he attempted to sell the properties at a profit, which I understand he alleged was given to charity. Why should someone like that get the benefit of that? Particularly when the court was concerned about giving those extended continuances time and time again and said, please understand that I am not bound to sentence you at a loss of zero and I have the discretion to sentence you higher. How does that make a sentence with this type of crime over multiple years, complex fraud, substantively unreasonable? Yes, Your Honor. I have a couple of responses to that and I think it's an important question. I think first of all, the value of the collateral always... There was always no loss and the fact that Mr. Deutsch was able to sell the properties helped the victims, two of whom wrote letters in his support. And I think second, equally importantly, the same factors, Your Honor, identified are present in the case of the co-defendant, Aaron Deutsch, who the district court sentenced to probation. And while we acknowledge that Aaron Deutsch had a lower guidelines range, the magnitude of the difference is not nearly the magnitude of the difference... Except that Mr. Aaron Deutsch argued that his role in this scheme was a lot less and what his conduct was in the scheme. And again, the court took that into consideration. Also, reading the transcripts of sentencing, the court is allowed to consider how a particular defendant presents to the court and whether they present in a way that shows remorse beyond the acceptance of responsibility by taking the plea. And when I compare the two transcripts of the statements, Mr. Jacob Deutsch's statement, the government noted, did not show any remorse whatsoever or understanding of his role and culpability, whereas Mr. Aaron's statement was quite different. The court can't take that into consideration? I want to respond to both points Your Honor made. The first point is that Aaron Deutsch got three leadership points and Mr. Jacob Deutsch got four. So the magnitude of their different roles is relatively minor, not significant, as Your Honor suggested. Aaron Deutsch was also a leader of the scheme and got a three-point leadership enhancement. So I don't think differing roles justifies the magnitude of the variance. And the district court also doesn't say that on the record. In terms of their differing expressions of remorse, in the Singh case, the district court made the exact mistake that the court made here in discounting expressions of remorse. They were also accompanied by expressions of a sense of mitigation that maybe the individual's Well, I don't think you understand. The government says where he says, I am who I am, that it's not being remorseful. But in full context, it just seems like that's what he's saying, right? I understand the significance of this day. It's probably one of the hardest days of my life. I don't like when people talk about me. Your Honor, you read about my past. I don't feel my past has nothing to do. I was born how I was born. I came into this world how I was, and I tried my best. I don't need mercy for that. I am who I am, and I tried the best to be all my life who I should be. Maybe it's awkwardly phrased, but he is sort of saying, like, I'm responsible for this. And it's an expression of remorse, right? Yes, Your Honor. That's just what I do, and, you know, we'll deal with this. Yes, Your Honor. We don't usually second-guess judges and presume that the transcript is going to reveal remorse, right? I mean, remorse turns out a lot of things. Well, does the district court say that the reason for the variance is because of a lack of remorse? No, Your Honor, the district court did not. So it's not inferring something from the record. Correct, Your Honor. Well, but the district court said the reason for the variance is for specific and general deterrence and went through the detailed complexity of the crime, the potential impact it could have had. I mean, he sold the properties for a profit because the market was what the market was. So if the judge considers deterrence, a lack of remorse for somebody who is a repeat offender does inform the sentencing judge as far as deterrence and specifically the need for specific deterrence. And you make a lot about this, you know, it's three times what the guidelines were. Well, is there, you know, how much does that inform a court? If the guidelines, hypothetically, were zero to three months, and the court sentences someone to nine months, versus somebody who's looking at 80 months, and the court sentences them to 240, that seems, you know, how can, I don't know that that's very helpful when we're dealing with a guideline that's 12 to 18 months. Your Honor, I think that this court uses the exact language I use with respect to three times the guidelines range. In Singh itself, where this court vacated a sentence as substantively unreasonable, there the guidelines were 15 to 21, the sentence was 60, and this court itself said that the variance of three times the higher to that point in that context, which is almost precisely our context, was such that it was substantively unreasonable because it was insufficiently explained and it was not justified by the reliance on a prior, on the criminal history. And I think that Your Honor gave reasons why the judge may have imposed a sentence above the guidelines range, but what the judge says, and what the record reflects, is that he's relying on the 20-year-old conviction. He's specific, the judge specifically says- No, he says, he says that that, he acknowledges that that conviction is dated. He doesn't change his criminal history. But that can inform a judge, and it coupled that with the statements your client made. Things like, I could have gotten these mortgages without the fraud. The property is worth money. And by the way, I help the community. I help the poor community. So when a judge hears someone in front of him or her that is not just, yes, accepting responsibility by pleading guilty, but at the same time minimizing the crime and painting himself as the Robin Hood of the community, the judge can take that into consideration for a lack of remorse. Your Honor, in Singh itself, the district court considered a much more serious criminal history that was much more similar to the offense at issue there. And this court said that was not allowed. So I respectfully disagree and would say under Singh, a court cannot consider a 20-year-old conviction for which a defendant serves three months. Or maybe it would have to provide more of an explanation, right? So we have said that if you rely on a factor that's accounted for in the guidelines to enhance the sentence, you need to explain why the guidelines accounting for it is not sufficient, right? Yes, Your Honor. Right here, the prior history didn't even figure into his criminal history because it was so old, right? That's correct, Your Honor. So if he were to say that this really makes a difference here, and it should factor in, he should have explained why the guidelines treatment of it wasn't sufficient, right? Correct, Your Honor. But so in addition to relying on the old conviction, he also makes this statement about racism in the real estate industry. So how are we supposed to understand that, right? So the district court says, This type of fraud blocks property purchases by law-abiding citizens and companies in attempting to participate in a real estate industry that continues to show elements of discrimination. Racial bias has proven persistent in limiting lending opportunities and the cost of those loans if they can be obtained in the first place and in the appraisals of minority-owned property. So he's saying that the real estate industry is racist, right? Yes, Your Honor. And then he says, But real estate ownership remains a critical manner of acquiring wealth and financial independence and it also presents business opportunities, presumably for minority members of the community, like the ones fraudulently obtained by Mr. Deutsch, right? So your position is he's saying, because Mr. Deutsch is white, he is taking opportunities in the real estate industry from minority members of the community? That is what the district court is saying, and it is the reason why we believe that there is a procedural error here because the consideration of systemic discrimination, which was, by the district court's own account, not part of the offense. That's right. And so then he immediately says Mr. Deutsch is not being accused of that type of discrimination and instead he's presented the support that he enjoys from a variety of people and organizations with whom he has been engaged throughout his work, right? So he says that Mr. Deutsch is not discriminating but he's the beneficiary of a racist system and that therefore I'm going to enhance the sentence. We think that's an entirely improper consideration under 3553A. It is similar to this court's Park case and that this court should reverse based on that procedural error. Do you think it's necessary to say that? I mean, it's possible to say. I mean, I don't know if this is right or not. Like, maybe it's unsupported that the real estate industry is racist, but it's possible that you might say even regardless of Mr. Deutsch's race, maybe he still would have said that the defendant here is taking away opportunities that are already limited because of racism. So does it really turn on Mr. Deutsch's race? I think it does, Your Honor, because the suggestion is that Mr. Deutsch, who is not a member of the minorities the district court is speaking about, got the properties in place of minorities who could have gotten it. If Mr. Deutsch's race is not being considered, then it's simply you took it away from law-abiding people who want its own property, not from minorities specifically. Even if it's not the only inference, we say even the appearance that the sentence reflects a defendant's race or nationality requires a remand for resentencing. So, like, even if there's a possible interpretation of it that doesn't turn on his race. Correct. Because it's not totally clear that it's race-neutral. That would require a remand, right? Correct, Your Honor. And the district court later says, without your fraud, you still would have gotten the loans otherwise. Do you think that turns on his race? Or that's a reference to what he earlier said about how the loan would have been approved anyway? Your Honor, it's not at all clear from the record. But where that statement appears, it does appear embedded within the commentary on race. Right. So we've said that if the district court, as I said before, is veering upward because of a factor already considered in the guidelines, he sort of needs to explain why the guidelines is inadequate. And here the district court didn't do that, right? Correct. He did not do it. We also said in Caveira that subjective considerations like the district court's feelings about a particular sort of crime is not a permissible basis for a sentence, right? Correct, Your Honor. And it does seem like the district court here has certain attitudes about the real estate industry and this kind of crime that it should be punished more severely in order to root out discrimination.  That seems like it's his feelings about the crime. Yes, Your Honor. And then we've said that the appearance of the sentence reflects a defendant's race or nationality or ordinary requirement for resentencing. It does seem like there is at least an appearance of that here, right? Yes, Your Honor. And I think what Your Honor is highlighting is the degree to which the procedural problems impact the substantive problems. I think that's a leading question and you only get to answer yes or no to those. I do have a question on that. No objections. The judge did say at page 98 of the special supplemental appendix, to be clear, Mr. Deutsch is not being accused of that type of discrimination. And instead he's presented the support that he enjoys from a variety of people, organizations with which he has engaged throughout his work. So the judge made clear that he wasn't considering Mr. Deutsch as participating in that type of discrimination. Correct? In the discrimination, but that's what takes it outside 3553A because it is no longer part of the nature and circumstances of Mr. Deutsch's offense. And let me ask you another question. If the judge had sentenced him at the time typical defendants are sentenced, within a few months of their guilty plea, this is two years later, gave him two years to sell the property, the loss would have been $11 million. Even if he had sentenced him, the last time he gave him his last continuance, the loss, there were still $4 million worth of property that had not been sold. So the presumptive loss would have been much higher. The court gave him a benefit by giving him two years to sell property, and then giving him a zero loss when the presumptive loss was $2.8 million. The court could have said, you disagree with that, but the court could have found his loss to be $2.8 million at the time of sentencing. Correct? Not correct, Your Honor. And I say that because- Well, you would have argued that it's different, but the court could have found that. That's what the PSR determined the loss was. The guidelines require that the loss account for the value of the collateral. And the value of the collateral didn't change. It being sold helped the victims, but the value of the collateral was what it was, and the loss was zero, and that was the defense's position throughout. That's the position- Even if he didn't have any indulgence of time to sell off the properties, you still would reduce the loss by the outstanding value of the collateral. Correct, Your Honor. Correct. And the government has not cross-appealed here. The district court's decision was that the loss amount was zero, and there's no basis in this record to say the loss would have been higher. The district court would have reached a different decision that would be supportable if the sentencing had come earlier. And I come back to the fact that Aaron Deutsch received a sentence of probation on the same facts. That sort of makes it worse, right? Because the district court is the one that makes the finding that there's a zero loss. And so it's clear that actually the upward variance is based on something other than the loss. Correct, Your Honor. At this point about how the district court says Mr. Deutsch is not being accused of that type of discrimination, I take it your position would be that also makes it worse. Like if he were actually being accused of discrimination, it would make sense to talk about racial discrimination in the context of sentencing him. But if it in fact has nothing to do with this particular defendant, it's at most weird and at worst very problematic to be talking about racism in the industry as a reason for punishing this person. Yes, Your Honor. I think it makes it significantly worse to consider systemic discrimination in the industry, particularly where it has nothing to do with this case. I'm well over time, but I appreciate the Court's questions. And if there are no further, I'll wait for a rebuttal. Thank you, Mr. Jacobs. We'll now hear from Mr. Reardon on behalf of the government. The floor is yours, Mr. Reardon. Thank you, Your Honor. May it please the Court, Connor Reardon for the United States. Over the course of some four and a half years, Jacob Deutsch carried on an elaborately choreographed scheme to unlawfully obtain nearly $50 million in mortgage loans from unsuspecting lenders. He cooked up fake rent rolls reflecting occupancy by non-existent tenants. He created false utility bills and other documents. Look, I don't think there's any question about any of that. And I guess, you know, getting those loans resulted in people losing big money because he went belly-up, then he'd be looking at a lot of time under the guidelines, right? Right, Your Honor. But the guidelines, in their wisdom, suggest that somebody who doesn't go belly-up and therefore sort of there's no harm, no foul, gives a benefit to such a defendant, correct? Sure, the guidelines account for the value of the collateral. Now, a judge is free to disagree with the guidelines, right? Yes, Your Honor. But the judge here didn't express a disagreement with the guidelines. I think that the judge did express a disagreement with the guidelines. How so? Point to me in the record where you think that's what… Because judges can do that and do do that all the time. In fact, they generally do it the other way. And I imagine Mr. Jacobs isn't unhappy when they go three times or, you know, a third of what the guidelines are below. But we allow that all the time. Where in the record did the judge say, I don't agree with this guideline. It seems to be a windfall to lucky defendants. And therefore, I'm going to sentence as though this was a belly-up loss. Sure, so I'll start, Your Honor, at basically 97 to 101 of the special appendix, in which the district court explains its sentence and really leads by stressing the risks to which Jacob Deutsch exposed Wenders. Now, the discordance between the risk that Deutsch created and the ultimate zero-loss figure factored not only in the court's sentencing remarks at 97 to 101 and in the statement of reasons, which again stresses the unintended loss. Well, that's the part that I was talking about with Mr. Jacobs. That is true that maybe the idea that the real estate industry is racist is something not accounted for in the guidelines, right? But that has nothing to do with this particular defendant, right? So shouldn't we understand those reasons on page 97 and forward? To be about something that has nothing to do with the guidelines, right? That is the district court's own views about the nature of this crime and whether you need to counteract systemic racism in the industry by punishing certain defendants more severely. Sure, so I mean the question about systemic discrimination in the industry is a distinct question from the discordance between the risk that Deutsch created and the zero-loss figure. Well, because he says that the type of fraud blocks property purchases by law-abiding citizens in an industry that's plagued by discrimination, racial bias has proven persistent, and here, and real estate ownership remains a critical manner of acquiring wealth and financial independence for minority members, like the ones fraudulently obtained by Mr. Deutsch, right? So the risk is, it's not that there's, the risk is that he's taking opportunities away from minorities who want to participate in the real estate industry. I think that these are distinct concepts, Your Honor. So there is the risk of loss to lenders. That features in the court's explanation of its sentence at 97 to 101. It features in the statement of reasons, and those references to the risk of loss are really the end of a thread that wends its way back through the entire proceeding below. But that is also something accounted for in the guidelines, right? So the risk of loss to lenders, that's why, you know, we have a presumptive loss and then it's reduced by the value of the collateral or anything that's returned to the borrowers, right? So the guidelines account for the risk of loss. Does he really explain why the way the guidelines account for that is inadequate and he needs to vary upwards? The district court explained this really throughout the proceeding below. As early as April of 2023, when the parties were first talking about kicking sentencing so that Deutsch could resell the buildings and try to reduce his loss to zero, the district court in a status conference noted that if it blessed this operation and permitted him to try to sell the buildings, then, yes, the loss might reduce down to zero under the guidelines, which the court noted at that early date might well result in an unjust guidelines calculation, an unjust recommendation under the guidelines. And the court put him on notice that it wouldn't, even if the loss came down to zero, the type of crime the court had the discretion to sentence him above what a zero-loss guideline would be. With regard to the court's comment about the racial disparity in opportunities for apartments, was the court responding to Mr. Deutsch's own statement to the court at page 87 of the supplemental record? When he has an opportunity to address the court, he says, he explains how they were floating the price, it took a few years, and we were selling it, we're not here for the long run, and I'm talking about, he's talking about other landlords who buy thousands of apartments, and he distinguishes himself from them, and he says, and we came in, and I said, this is basically a C-minus. And, Your Honor, a C-minus means for low-income people who are working in bodegas or people who don't have a lot of money. And I said, what if we start to make a model and we give them such a comfortable life like the middle guy has, or the rich guy in downtown has. And maybe because of that, we will get better tenants, not drugs and other things. And we will make good rents also. They're going to pay the rent, and we will make a business model out of it. And then he goes on to talk about how this wasn't really a crime, he was helping the community. Could the court have been responding to those comments by Mr. Deutsch when it refers to, wait a minute, your conduct does have an impact on the minority community potentially? Yes, Your Honor. So the government understands the district court to have been responsive in these comments to basically two pre-existing threads in the case. One was an argument that was made in the government sentencing memorandum, and again during the sentencing hearing, that Jacob Deutsch's conduct by irrigating to himself, basically the scarce resource of these loans, risked harms to honest real estate developers who can't buy up buildings at this rapid rate. And so there are certain individuals who are forced out of the market by basically the artificial constraints that are put in by virtue of his fraud. Then at sentencing, Mr. Deutsch stands up and makes a series of remarks basically suggesting that his conduct was more or less harmless and in fact in a lot of ways good for the community. The district court in explaining its sentence, the government understands then to respond directly to Mr. Deutsch's comments by picking up that thread from the government's argumentation and saying, look, the government points out in its sentencing papers that when somebody enters the market by way of fraud, that person takes opportunities that would otherwise go to honest developers. No, so the government's argument was about law-abiding sort of honest developers. Well, I suppose it sort of depends what you mean by racist. If it still exhibits vestiges of discrimination? Sorry, that the real estate industry continues to show elements of discrimination and that racial bias is persistent in limiting lending opportunities in the cost of loans if they can be obtained in the first place and the appraisals of minority-owned property. I think that it's sort of broadly understood that there continue to be disparate opportunities within this industry. So you think that there is racism in the provision of loans? Was that part of the sentencing memorandum and the factors that should go into the sentence? No, it was not part of the government's sentencing memorandum. Are there any findings that that's the case, or that Mr. Deutsch played a role in it? No, what I would say in response to that, Your Honor, is that this came up at sentencing, Mr. Deutsch didn't raise any objection to it. So at the time, nor on appeal... If the district court had actually made a reference to his race, that we should then remand for resentencing, right? I'm sorry, Your Honor? If the district court had made a reference to the defendant's race, we should remand for resentencing regardless of whether there was an objection. If there were a basis for concluding that it was part of the basis for the defendant's sentence, yes. You said that if it's arguable and a reasonable observer might understand the sentence to be based on his race, we also remand. So even if you don't think the best reading of it is a reference to the race, if it's arguably a reference to his race, it depends on his race, doesn't that require a remand? If it did, but the government doesn't believe that it can be understood that way.  Yes, I think it's arguable. You're saying that minorities are denied these opportunities like the ones Mr. Deutsch obtained, right? You don't think that it's even possible to understand that as Mr. Deutsch, because he's white, benefiting from racial disparities in the provision of loans? No, I don't, Your Honor. Mr. Deutsch didn't get these loans because he's white. He got these loans because he defrauded lenders. But can we stop you there just for a second? What if it's then just a statement about the race of the victims? There's the victim lenders who are incurring a risk based on false pretenses. But then there's the victim honest borrowers who are going to be shorted out of opportunities to build in the real estate industry. And if the statement was just that's the harm that you cause as well to poor people or to honest people. But if you say to black people or to Hispanic people, is that a problem? If you single out the victims based on race, isn't that a problem? Isn't it a problem if the district court singles out victims based on race? If the district court singles out the victims on the basis of their race to say that that's what makes this more insidious? I don't think that's a problem, Your Honor. The government cites Diaz, which is an unpublished disposition from this court from 1997 involving review of a sentence actually out of the District of Connecticut in which the defendant made arguments about his sentence and this court recited in its opinion that the district court had referred to the serious harms that the defendant's conduct caused the Latino community in New Haven, Connecticut. Identifying the fact that harms from the defendant's conduct or from the kind of conduct in which the defendant engaged may fall disproportionately on some demographic does not logically... If it's purely descriptive, I can see your point, but if it is saying that there is greater moral weight attached to this because of the race or ethnicity of a victim, that would seem to be problematic, wouldn't it? I'm not sure that the district court said here that there was greater moral weight attached to it. I would view it very much as the equivalent of what was said in the Diaz case, that there's a particular demographic who may have felt the harms from this kind of conduct. And to get back to Judge Kahn's original point, this was a response to Mr. Deutsch's own comments at sentencing, again, that this kind of conduct was basically harmless. The district court picked up on this broader argument... The harm that he's identifying is the harm involving racial discrimination, right? Yes. Okay, so he is singling out the victims based on their race, at least. Yes, he is certainly referring to the... So he thinks that there's extra harm because of the racial status of the victims. Is it not at least arguable that a reasonable observer could think that Mr. Deutsch would be punished less severely if he were a minority versus being white? I don't think it's arguable that that would be the case. Using this case as an exemplar is perhaps a bad example because I am aware from working on the case what Mr. Deutsch's demographics are. But to take Diaz as an example, I have no idea whether the particular defendant in that case was Latino or not. The Latino community in New Haven can feel the harms that are associated with a defendant's conduct irrespective of where that particular defendant hails from. And I think that the same is true here. If Mr. Deutsch had been himself a member of one of the groups that find it more difficult to gain access to loans but he had engaged in fraud to get them, he still would have been harming law-abiding real estate developers. I get that. I mean, it's logically possible. I was just kind of getting at whether you think, given everything he says, a reasonable person might think that the district court was taking into account his race. I don't think that a reasonable person could think that. Your Honor, this court's cases dealing with race as a potential basis for the imposition of a sentence look nothing like this one. What about the attitudes of the district court about the crime? So if the district court has a theory that there's systemic racism in the real estate industry and it should be policed more aggressively by the government, but that's not reflected in the statutes or the guidelines. Is the district court's attitudes toward the nature of the crime, is that a permissible sentencing factor? So I think that a court is permitted to have attitudes toward certain types of crime. I think if they're purely subjective and unsupported, then that's not an appropriate basis for imposing a sentence. But you did acknowledge that there were no findings here that anything Mr. Deutsch did implicated race or racial discrimination. You just said that the U.S. Attorney's Office in Connecticut thinks that there are racial disparities in the real estate industry in Connecticut. But you didn't put evidence of that before the district court, right? So my position, Your Honor, is not that the U.S. Attorney's Office has a particular view about exactly how things are shaking out in the lending industry. Our view is that it appears to be broadly... It's just common sense inferences. I mean, if it really is just obvious common sense, you should be able to say right here, this is obvious, and so it's permissible for the district court to take it into account. If you're saying it's contestable, and I'm very wary about saying that the district court is right on these facts, then it means that it is something that we should take evidence on, right? Your Honor, what I am saying, and what we say in our brief, is that it is broadly acknowledged that there remain vestiges of discrimination in the lending industry. I mean, we cite Supreme Court cases that acknowledge that. I think that the government did not make that... But the finding here, or the dispositive fact in this case, is Mr. Deutsch is not being accused of that type of discrimination. The district court excludes Mr. Deutsch from being implicated in the discrimination. And he's saying because there is a general kind of discrimination going on, that's going to have implications for the sentences he imposes on Mr. Deutsch, right? Right. I think to return to Judge Kahn's point, that the way to understand this is that it is a response by the district court, really in the way of an admonition to Mr. Deutsch, that is responsive to his argument that his conduct did not really create any harms, that he can't call the lenders victims, that really this was a good thing for the city of Harkin. He could have responded to that as Judge Soltan was suggesting by just saying the harm is that you take away opportunities from law-abiding citizens, but then he talks about this whole racial discrimination. That was not a necessary part. Mr. Deutsch did not raise that. Mr. Deutsch did not raise that. Mr. Deutsch also did not object to it. And Mr. Deutsch has not on appeal suggested what additional contentions he might have liked to have made if he had received notice that the district court was going to be thinking about this. I think that one of the reasons that he did not receive notice was again that this occurred in the context of a... You agreed that if in fact it's reasonable to understand the district court as making reference to his race, then it would require remand. I'm asking about whether that's a reasonable interpretation of what the district court said. I think that the rule is not if we understand the district court to have been making reference to his race, the rule is if a reasonable observer would conclude that race was a basis for his sentence, then remand is required. Mr. Deutsch has not on appeal identified any contentions that he would have liked to have made in response to this point. I do not understand him to be saying that there are no vestiges of racial discrimination within the lending industry. I don't think that he's saying that... If there are vestiges of discrimination within the lending industry, would that in any way justify a harsher sentence for Mr. Deutsch? I don't think that there is really an indication on this record that that figured prominently in the district court's selection of a sentence. Let's say it did. Let's say the district court said I'm going to impose a harsher sentence because there's discrimination in the real estate industry. Would that be an impermissible consideration? I think that it would be dependent on the facts of a given case. I'm reluctant to give sort of a blanket answer about whether that kind of reasoning is okay. You're talking about what the district court said or didn't say, but let's say the district court was pretty explicit about it and said I think that this is an industry that's beset by discrimination and for that reason I'm going to vary upward from the guidelines. I think that a district court is certainly permitted to identify the kinds of harms that can flow from a particular defendant's conduct. I also think that it is permissible for a district court... Okay, but how does the discrimination flow from Mr. Deutsch's conduct? So, I don't think that the district court identified particular members of minority groups who were not in a position to get loans because of what Mr. Deutsch did. I think that the district court's reference was much more broad than that and it was, again, in the way of an admonition to Mr. Deutsch who was saying that there's really no harm associated with the behavior of the engaged... Can I ask you something you said before which is you said that the district court's justification for the upward variance was about the risk of harm to law-abiding lenders, right? I think that it was largely about the risk of harm to... But the district court then says if Mr. Deutsch were to present on these facts without any criminal history, the court would be in a position to seriously consider the need to impose a sentence involving incarceration for this non-violent conduct given their legal actions of the defendant. But the court's not in that position because of the prior conviction, right? So isn't the district court saying that actually, but for the prior conviction, I would have even considered varying downward and not imposing incarceration at all? So the reason for the upward variance was the prior conviction. The district court is saying that had he presented without a prior conviction, it then would have been in a position to entertain his request for a sentence that did not involve jail time. Because he presented with a prior conviction, it was not even in a position to think about that. The magnitude is, I think, part of the problem here, right? We have somebody who's gone three times higher, the judge went three times higher than what the government was asking for, right? Or more. Is that an accurate statement? The government's original sentencing advocacy is laid out in its sentencing memorandum, asked for at least 48 months in prison irrespective of the ultimate guidelines calculation. So that was the government's position walking into sentencing. At the outset of sentencing, after the court calculated the loss at zero and the guidelines range is 12 to 18 months, the government at that point asked for a sentence toward the high end of the guidelines, but then asked by the court whether it should limit itself to consideration of a guideline sentence deferred to the court. So the government's advocacy on that point did change over time. We were sort of on record walking into sentencing that we believed a sentence of at least four years was appropriate. The tricky part is it's hard to see from the record what the government's view was and what the court's view was as to why this well above guideline sentence was imposed. And so you tell me, what do you think are the in order, what do you think are the key variables that led to this being a sentence three times the high end of the guidelines range? Sure. Number one is the discordance between the risk that which created and the ultimate loss of zero. That's where we started in this argument. That's true in virtually every case involving mortgage fraud, right? That is something that the guidelines take into account and that there are always going to be people who engage in mortgage fraud who by luck haven't left, haven't gotten belly up and therefore don't leave a lender who's out of pocket hundreds of thousands of dollars or millions of dollars. Yes, and in those circumstances a district court is entitled to find that the risk that the person created is the more apt measure of the person's culpability than the fact that happenstance ultimately and in this court perhaps the delay of sentencing ultimately led to a loss of zero. This court emphasizes much in Caveira. The fraud guidelines are very much driven by the financial impact of the crime and the court said in Caveira look, even though the guidelines are driven by that, a district court has the discretion to determine that notwithstanding the very high loss notwithstanding the very low loss that the right measure of culpability lies elsewhere and that is what the district court determined in this case. It was making remarks as Judge Kahn emphasized throughout the proceeding below as early as April of 2023 when the parties got on the phone for a status conference and the court flagged the prospect that the guidelines range that was ultimately generated in the event of zero loss would not be an apt measure of Mr. Deutsch's culpability. When we actually got to sentencing and all of the guidelines were in, including the government's arguments in the sentencing memorandum saying that the loss here is not the right way to measure his blameworthiness, that is what the district court did. So that's point number one. Point number two is the nature of the fraud that Mr. Deutsch engaged in. It went on over the course of four and a half years. It involved the very kind of conduct that I began by describing and that the court said was quite well established. Hundreds of fake apartments that were staged to look as though folks were living there. In this court's cases on substantive reasonableness, the court has affirmed variances upward from the guidelines because of the way that the fraud was committed. And that was a permissible consideration for the court in this case. At 68 of the special appendix, the court is questioning defense counsel. This is prior to the imposition of sentence. But the court says to defense counsel in a question, it refers to the staged apartments, to the fake tenants. And then says a couple of lines down, that's not all I'm thinking about in this case, but it's significant. The fact that the court describes that as not all that it's thinking about and calls it significant, I think undermines the notion that the only thing that the court was considering in imposing a sentence was Mr. Deutsch's prior conviction. So those are the first two points. Third is certainly the prior conviction. There's no question that that was important. I'm sorry, Your Honor. I see that I'm over. You're way over. You're just noticing now? I actually want to hear about the prior conviction. So why don't you finish that? Thank you, Your Honor. The nature of the prior conviction. It is not as though the court simply said, look, you've been convicted of a crime before and now you're back in court. And I think that in and of itself makes a big difference. The court referred several times during its sentencing remarks to the fact that the prior conviction was for similar conduct. That it was for a crime that, you know, was that resembled in many respects the conduct that brought Mr. Why is it resembled? I mean, the earlier conviction is for insurance fraud and this is staging apartments and getting a fraudulent law. I mean, they're both fraud, but it's not like the same kind of scheme, right? I mean, I think they're quite similar schemes in that they both involved Jacob Deutsch submitting, you know, false documentation to obtain funds to which he was not entitled. So in that regard, the mechanics of the fraud were similar in some ways. And the fact that it is the same crime is something that this court has emphasized in affirming above guideline sentences. If we were to disagree with the government in this matter, would it go back down for sentencing? At resentencing, the court's not bound by the guideline calculation, correct? The court could sentence outside of the guidelines? Just as it did this time, Your Honor, because consistent with Caveira, it determined that the guidelines, which aligned with the fact that the loss was ultimately zero largely a product of happenstance, was not the best measure of Jacob Deutsch's culpability. So Mr. Deutsch is not subject to a guideline range that maxes out at 18 months? No. Because the court could, there are guidelines, the court could say this doesn't call for a guideline sentence. I'm going to impose the sentence I think is appropriate for specific general deterrence the level of the crime involved irrespective of the fact that the real estate industry took a turn and this involved a loss of zero, correct? As the court did in the proceeding below, Your Honor. So can I ask so I understand when I read that passage from this report about the prior conviction being the key consideration, you said well it actually has some wiggle room, which granted it's not clear that it's the only consideration. Let's say the district court did say that was the reason because of the prior conviction. Would that bear the weight of the upward variance? So if that were the sole basis for the upward variance, then I think this case would look a little bit more like Singh and my argument would be more difficult. I don't think it would be exactly like Singh because there is something about the fact that the prior criminal conviction was for the same basic kind of conduct. It was a fraud case which the government regards as significant. In Singh, the court emphasized multiple points about the crimes. One was there was really procedural error in the court's view in assessing the severity of the defendant's criminal record. He had eight prior convictions. They were basically for petty offenses, petty larceny, forgery, shoplifting, possession of stolen property. It's a federal wire fraud conviction, which in the government's view is significant not only because of the fact that it's a federal conviction which is in itself significant, but because it is a federal fraud conviction. When Mr. Deutsch engaged in the conduct that was at issue here over the course of four and a half years, he had, based on prior experience, ample reason to appreciate the potential consequences of the behavior that he was engaging in. He nonetheless kept it up for the better part of half a decade. He did so over that period of time in conducting a scheme that comprised hundreds of independently criminal acts, throughout which he had the constant opportunity to stop, pause, reflect on the fact that his conduct could lead to federal prison as it had before. He didn't do so. In that regard, the reasons that were identified by the district court are mutually reinforcing. They sort of draw strength from each other and ultimately justify the, albeit well above the guidelines, sentence that was imposed here. I'm well over. I'm happy to answer any other questions. The government wasn't arguing, I don't think, about a separate victim class of honest borrowers who would be frozen out of the loan market because of this conduct. Your government wasn't arguing that, right? The government argued in its sentencing memorandum that Deutsch had arrogated to himself opportunities that other real estate developers who operate honestly have to pursue, you know, sort of through slower growth. That's different than what the district court was really focused on. I think that the government's argument can reasonably be understood to mean that there are honest developers who are not able to access the same kinds of opportunities that Jacob Deutsch was able to obtain by engaging in this fraud. Thank you. Thank you, Your Honor. Mr. Jacobs, back to you. Thank you, Your Honor. I'd like to just briefly respond to a few points my colleague raised. I think first, when the court asked what were the reasons for the upward variance, my colleague says the nature of the frauds District Court references the staging of the apartments and other things of that nature. The staging of the apartments was done by Aaron Deutsch and Aaron Deutsch received probation. All of the factors referenced except criminal history are present in Aaron Deutsch's case. So that's the first point. There was an emphasis on the similarity of the conduct from 20 years ago versus the crime today. I don't think the record bears that out. And in saying there was a much more serious criminal history and that defendant had also previously entered the country illegally. So engaged in the exact conduct that was the offense of conviction, even though there was not a conviction for that particular conduct. Can I pause? I mean, that's a very effective point you just made, but doesn't it undermine your race point? In other words, Aaron Deutsch got a noncustodial sentence and yet his crime also had the same impact on the real estate market and those honest borrowers who were frozen out of the market. I think the problem that we face is the one that Judge Menasche identified, which is that this court's case law says that if a reasonable observer looking at the sentencing would think that race played a role A reasonable observer would also be encouraged to look at what happened to the co-defendant who committed the exact same crime and got a noncustodial sentence, right? I think if that is the analysis, then first of all, the district court doesn't make the comments about systemic discrimination in sentencing Aaron Deutsch and it was an improper consideration for Jacob Deutsch regardless of what happened with respect to Aaron Deutsch. There may have been other reasons Let's make a statement to Aaron Deutsch that says something like look at it because you know what I'm going to do if I see you again which is a reference to the Jacob Deutsch sentencing That's right, your honor, and that anticipates my next point which is that the warning the district court gave to Aaron Deutsch could be viewed as a product of the same improper considerations that influenced and actually led to Jacob Deutsch's sentence. The warning was essentially you saw what I did to your co-defendant who has a criminal history. If you come back here with that, you'll face the same Well, that implies, again, that's a criminal history-based enhancement, not a racially-based enhancement Well, if we take that statement at the district court's word, then it really is like Singh. It's a case based on criminal history where Jacob Deutsch's sentence is obviously substantively unreasonable under Singh Second, just a second point to pivot for a moment, I don't think it is an accurate reading of this record to say that the district court's consideration of systemic discrimination is at all responsive to anything that happened previously in the sentencing or anything in either party's submission. I think that it comes out of nowhere and it also clearly influences the sentence in post. It's part of the district court's sentencing remarks as the district court is explaining what it's doing. And then last, I think that there is really very little question that this sentence was based, at least based on what the district court says principally on Jacob Deutsch's This case is on all fours and it presents an unusually clear example of a substantively and procedurally unreasonable sentence in light of this court's decision in Singh. I'm happy to answer any further questions. No, I think we've done our money's worth. I don't mean to make light. It's obviously a serious case. Thank you both. Very well argued. We will reserve decision.